# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| R2 Solutions LLC,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Samsung Electronics America, Inc.,<br><br>　　　　　Defendant. | Civil Action No. 4:21-cv-00089<br><br>Jury Trial Demanded |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff R2 Solutions LLC files this Complaint against Samsung Electronics America, Inc. for infringement of U.S. Patent Nos. 8,307,029 ("the '029 patent"), 8,209,317 ("the '317 patent"), and 7,610,277 ("the '277 patent"). The '029 patent, '317 patent, and '277 patent are referred to collectively as the "patents-in-suit."

## THE PARTIES

1. Plaintiff R2 Solutions LLC ("R2 Solutions") is a Texas limited liability company located in Frisco, Texas.

2. Defendant Samsung Electronics America, Inc. ("Samsung") is a New York corporation with a regular and established place of business located at 6625 Excellence Way, Plano, Texas 75023. Samsung may be served with process through its registered agent, C T Corporation System, located at 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

3. Samsung's significant presence in this District is summarized on its own website:

> Long committed to the North Texas community, Samsung's move to Plano further demonstrates the company's dedication to Texas and being an invested corporate citizen. North Texas is home to Samsung Electronics America's second biggest employee population in the U.S. across multiple divisions – Customer Care, Mobile, Mobile R&D and Engineering.In all, more than 1,000 regional employees from two current locations in Richardson and Plano will be relocated to the new location. Over time, the space will accommodate growth and foster greater innovation for the brand.

https://news.samsung.com/us/samsung-electronics-america-open-flagship-north-texas-campus/.

## JURISDICTION AND VENUE

4. This action arises under the patent laws of the United States, 35 U.S.C. § 101, *et seq*. This Court's jurisdiction over this action is proper under the above statutes, including 35 U.S.C. § 271, *et seq.*, 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1338 (jurisdiction over patent actions).

5. This Court has personal jurisdiction over Samsung in accordance with due process and/or the Texas Long Arm Statute because, among other things, Samsung does business in this State by, among other things, "recruit[ing] Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state." TEX. CIV. PRAC. & REM. CODE § 17.042(3):



https://sec.wd3.myworkdayjobs.com/Samsung_Careers/3/refreshFacet/318c8bb6f553100021d223d9780d30be.

6. Further, this Court has personal jurisdiction over Samsung because it has engaged, and continues to engage, in continuous, systematic, and substantial activities within this State, including the substantial marketing and sale of products and services within this State and this District. Indeed, this Court has personal jurisdiction over Samsung because it has committed acts giving rise to R2 Solutions' claims for patent infringement within and directed to this District, has derived substantial revenue from its goods and services provided to individuals in this State and

this District, and maintains regular and established places of business in this District, including at least Samsung's large corporate office in Plano.

7. Relative to patent infringement, Samsung and has committed, and continues to commit, acts in violation of 35 U.S.C. § 271, and has made, used, marketed, distributed, offered for sale, and/or sold infringing products and services in this State, including in this District, and otherwise engaged in infringing conduct within and directed at, or from, this District.  Such infringing products and services include: (1) Samsung SmartThings system, and (2) Samsung Bixby.  All such infringing systems are hereinafter referred to collectively as the "Samsung Systems."  Such Samsung Systems have been, and continue to be, offered for sale, distributed to, sold, and used in this District, and the infringing conduct has caused, and continues to cause, injury to R2 Solutions, including injury suffered within this District.  These are purposeful acts and transactions in this State and this District such that Samsung reasonably should know and expect that it could be haled into this Court because of such activities.

8. Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b) because Samsung has regular and established places of business in this District and has committed acts of infringement in this District.  Samsung's regular and established places of business in this District include, at least, its Plano, Texas corporate office.  Paragraphs 2–3, which detail Samsung's significant presence in the District, are herein incorporated by reference.  Indeed, Samsung conducts business in this District, including marketing and selling the Samsung Systems to customers located in this District. Samsung's activities, or the actions of the Samsung Systems, in the District constitute one or more steps of the methods claimed in the patents-in-suit.

## BACKGROUND

9. The patents-in-suit were filed by Yahoo! Inc. ("Yahoo!") between 2006 and 2009. At the time, Yahoo! was a leading Internet communications, commerce, and media company. Yahoo! invested billions of dollars in research and development over this period, filing hundreds of patent applications each year to cover the innovative computing technologies emerging from its expansive research and development efforts.

10. Yahoo! began as a directory of websites that two Stanford graduate students developed as a hobby. The name "Yahoo" stands for "Yet Another Hierarchical Officious Oracle," a nod to how the original Yahoo! database was arranged hierarchically in layers of subcategories. From this initial database, Yahoo! would develop and promulgate numerous advancements in the field of data storage and recall.

11. For example, in 1995, Yahoo! introduced Yahoo! Search. This software allowed users to search the Yahoo! directory, making it the first popular online directory search engine. This positioned Yahoo! as the launching point for most users of the World Wide Web. By 1998, Yahoo! had the largest audience of any website or online service.

12. However, the early iterations of Yahoo! Search did not operate like a modern search engine because Yahoo! Search was only a directory. Yahoo! Search first integrated a Web crawling engine in 2000. Yahoo! Search used Google's Web crawling engine from 2000–2004. During this time, Yahoo! was developing its own Web search technologies. Yahoo! deployed its own Web crawler in early 2004. The engine, known as Slurp, allowed Yahoo! to collect documents from the Web and build a searchable index. The patents-in-suit relate to innovations associated with Yahoo! Search that were developed and implemented during this period, which enabled Yahoo! to become Google's biggest competitor in the search engine space.

## THE PATENTS-IN-SUIT

13. The '029 patent is entitled, "System and Method for Conditional Delivery of Messages." The '029 patent lawfully issued on November 6, 2012 and stems from U.S. Patent Application No. 11/953,494, which was filed on December 10, 2007. A copy of the '029 patent is attached hereto as Ex. 1.

14. The '317 patent is entitled, "Method and Apparatus for Reconstructing a Search Query." The '317 patent lawfully issued on June 26, 2012 and stems from U.S. Patent Application No. 13/270,933, which was filed on October 11, 2011. The '317 patent is a continuation of U.S. Patent Application No. 12/765,676, filed on April 22, 2010, which is a continuation of U.S. Patent Application No. 11/502,202, which was filed on August 10, 2006. A copy of the '317 patent is attached hereto as Ex. 2.

15. The '277 patent is entitled, "Method and System for Launching a Browser." The '277 patent lawfully issued on October 27, 2009 and stems from U.S. Patent Application No. 11/693,448, which was filed on March 29, 2007. A copy of the '277 patent is attached hereto as Ex. 3.

16. R2 Solutions is the owner of the patents-in-suit with all substantial rights, including the exclusive right to enforce, sue, and recover damages for past and future infringements.

17. The specifications of the patents-in-suit disclose shortcomings in the prior art and then explain, in detail, the technical way the claimed inventions resolve or overcome those shortcomings. And, accordingly, the claims of the patents-in-suit are directed to patent eligible subject matter under 35 U.S.C. § 101. They are not directed to abstract ideas, and the technologies covered by the claims consist of ordered combinations of features and functions that, at the time of invention, were not, alone or in combination, well-understood, routine, or conventional.

18. The specification of the '029 patent references the "great deal of information [that] is generated when people use electronic devices," describing deficiencies that are created when such information is abandoned (or unused). *See, e.g.*, '029 patent at 1:6–20. Accordingly, the '029 patent describes "systems and methods for using data collected and stored by multiple devices on a network in order to improve the performance of the services provided via the network." *Id*. at 1:24–27.

19. The specification goes on to introduce the concept of a W4 COMN network (*e.g.*, "a collection of users, devices and processes that foster both synchronous and asynchronous communications between users and their proxies" (*id*. at 3:17–27)) and W4 COMN data (*e.g.*, social, spatial, temporal, and logical information associated with a Real World Entity (RWE) and an Information Object (IO) (*id*. at 3:34–44)). As the specification describes, a "W4 engine" may be used as the "center of the W4 COMN's central intelligence" to use W4 COMN data associated with the RWEs and IOs, along with user-configurable settings, to determine whether and when to send messages from a sender to a designated recipient. *See, e.g., Id*. at 8:24–40. For example, the W4 COMN may "use W4 data to allow users to tailor when and how messages are delivered to other users or their proxies. The information obtained about a W4 entity from any source or communication channel may be used as a basis for delivery conditions for any message delivered via the W4 COMN on any communication channel interoperating with the W4 COMN." *Id*. at 16:58–64. The W4 COMN architecture may include, for example, a "sensor layer" of devices, users, nodes, and RWEs, a "data layer" that includes data produced by the sensor layer and stored and cataloged, a "user profiling layer" that is distributed between a network infrastructure and user applications/processes, an "applications layer" for providing a user interface, and a

"communications delivery network" for delivering data via synchronous or asynchronous communication. *See, e.g.*, *id*. at Fig. 4, 10:17–50.

20. An embodiment of the invention described in the '029 patent is reflected, for example, in Claim 1 of the '029 patent:

A method comprising:

receiving from a sender, at a computing device, a request to deliver a first message [to] a recipient, the request identifying at least one delivery condition set by the sender;

identifying, via the computing device, at least one real world entity (RWE) and information object (IO) associated with the at least one delivery condition;

retrieving, at the computing device, W4 COMN data associated with each of the identified at least one RWE and IO, the W4 COMN data comprising social data, spatial data, temporal data and logical data available to the network associated with the at least one RWE and IO;

monitoring, via the computing device, the W4 COMN data for current information related to the at least one RWE and IO indicating to determine that the at least one delivery condition is met; and

delivering, over a network, the first message when the at least one delivery condition is met.

*Id*. at Claim 1.

21. The inventions described and claimed in the '029 patent improve overall efficiency and effectiveness of distributed systems by reducing losses attributable to unused data, as described above. Moreover, the inventions provide an improvement in computer functionality rather than economic or other tasks for which a computer is used in its ordinary capacity.

22. Relative to the '317 patent, the specification explains that existing search engine interfaces "may be rigid and require uses to submit full queries to perform search[s]." '317 patent at Abstract. Traditional search engines were built with desktop computer users in mind. Thus, they were designed with the assumption that a user had access to a full keyboard for composing a

complete, properly structured search query. However, as noted in the specification of the '317 patent, users at the time could increasingly access the internet from a variety of devices, including "cell phones, personal digital assistants, and the like." *Id.* at 1:44–47. Portability started to become "an increasingly important concern for users." *Id.* at 1:50–52. The increasing portability of these devices came with a tradeoff in input capabilities. *See id.* at 1:50–52. For example, most phones at the time the '317 patent was filed did not have a full keyboard. The simpler input mechanisms available on mobile devices presented a barrier to entering properly structured queries, thus limiting users' ability to fully explore the Internet. *See id.* at 1:52–53.

23. To solve these problems, the '317 patent discloses "a flexible and intuitive system for reconstructing a search query based on a received partial query." *Id.* at 1:16–18. This solution is embodied in Claim 1 of the '317 patent:

> A computer database system for providing search results to a user in response to user submissions over a data network, the computer database system comprising:
>
> a database configured to store information about events in the computer database system; and
>
> a query reconstruction server in data communication with the database and operative to receive a partial query submitted at a remote user client system by a user seeking search results matching the submitted partial query and, ***in response to the received partial query, determine a full query*** based on
>
> > (i) the received partial query, and
> >
> > (ii) information stored in the database about queries previously-submitted by users,
>
> wherein the submitted partial query comprises an abbreviated or incomplete search query which is not fully representative of an entire search query desired by the user and the full query is better representative of the entire search query desired by the user.
>
> (emphasis added).

24. The specification explains that partial queries are "shorthand ways of expressing typical search queries." *Id.* at 3:15–17. For example, "auto ins" may be a partial query for the full search query "auto insurance." *Id.* at 3:20–23. While "auto ins" may be an intentional abbreviation, it might also be a typographical error resulting from the restrictive input options of a mobile device. Because the claimed invention will nevertheless be able to take the incomplete query "auto ins" and return search results for "auto insurance," a broader array of mobile devices and input mechanisms may be used to search the Internet. *See id.* at 1:43–56.

25. Finally, the '277 patent seeks to solve problems with the usability of graphical user interfaces. It explains that "[s]creen space can become crowded by various programs and control interfaces." '277 patent at 1:9-11. Thus, "[a] user may be impeded in performing a particular task because of the number of programs and control interfaces crowding a user's screen." *Id.* at 1:11-13. "For example, in order to open one control interface, another control interface may need to be closed, thereby complicating the process of starting the first control interface." *Id.* at 1:13-16. Similarly, "requiring a user to navigate various graphical interfaces to access a searching utility can increase the effective time of the searching operation." *Id.* at 1:25-28.

26. The '277 patent thus discloses systems and methods "for searching a publicly accessible network (e.g., the Internet) with an efficient use of space on a display screen." *Id.* at 1:20-23. This allows users to "search[] a network in an efficient and effective manner." *Id.* at 1:28-29.

27. The solutions of the '277 patent are embodied, for example, in Claim 14 of the '277 patent:

> A computer-operated searching system, the system comprising:
>
> a monitoring software routine stored on a computer-readable storage medium that monitors keyboard messages;

10

> an interface software routine stored on the computer-readable storage medium that visibly displays an interim graphical user interface on a display of a computing device, wherein the monitoring software routine activates the interface software routine upon detection of a first keyboard message by the monitoring software routine;
>
> wherein the interface software routine receives a text string relating to a requested search, said text string comprises text and a type of file to be targeted;
>
> a launching software routine that constructs a search string from the text string and launches a browser program using a launch command;
>
> wherein the launch command contains the search string; and
>
> wherein the browser program is different from the monitoring software routine, the interface software routine and the launching software routine.

28. The inventions described and claimed in the '277 patent improve usability of graphical user interfaces by allowing a user to quickly launch a search utility. Instead of having to navigate an often-crowded interface, a user can open an *interim* graphical user interface via a simple keyboard message. The user can then simply enter a text string and the device will launch a browser to perform the user's search. The user thus saves time that would often be spent trying to reach the searching utility.

29. In essence, each of the patents-in-suit relate to novel and non-obvious inventions in the fields of search engines, database structures, and graphical user interfaces.

## COUNT I
## **INFRINGEMENT OF U.S. PATENT NO. 8,307,029**

30. R2 Solutions incorporates paragraphs 1–13, 16–21, and 29 herein by reference.

31. This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq*.

32. R2 Solutions is the owner of the '029 patent with all substantial rights to the '029 patent, including the exclusive right to enforce, sue, and recover damages for past and future infringements.

33. The '029 patent is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code.

*Direct Infringement (35 U.S.C. § 271(a))*

34. Samsung has directly infringed and continues to directly infringe one or more claims of the '029 patent in this District and elsewhere in Texas and the United States.

35. To this end, Samsung has infringed and continues to infringe, either by itself or via an agent, at least claims 1, 4–6, and 10 of the '029 patent by, among other things, making, offering to sell, selling, testing and/or using the Samsung SmartThings devices, including the SmartThings Hub and the SmartThings Cloud.

36. Attached hereto as Ex. 4, and incorporated herein by reference, is a representative claim chart detailing how Samsung infringes the '029 patent.

37. Samsung is liable for its infringements of the '029 patent pursuant to 35 U.S.C. § 271.

*Damages*

38. R2 Solutions has been damaged as a result of Samsung's infringing conduct described in this Count. Samsung is, thus, liable to R2 Solutions in an amount that adequately compensates it for Samsung's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT II
### INFRINGEMENT OF U.S. PATENT NO. 8,209,317

39. R2 Solutions incorporates paragraphs 1–12, 14, 16–17, 22–24, and 29 herein by reference.

40. This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq.*

41. R2 Solutions is the owner of the '317 patent with all substantial rights to the '317 patent, including the exclusive right to enforce, sue, and recover damages for past and future infringements.

42. The '317 patent is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code.

*Direct Infringement (35 U.S.C. § 271(a))*

43. Samsung has directly infringed and continues to directly infringe one or more claims of the '317 patent in this District and elsewhere in Texas and the United States.

44. To this end, Samsung has infringed and continues to infringe, either by itself or via an agent, at least claims 1–2, 8–10, and 12 of the '317 patent by, among other things, making, offering to sell, selling, testing and/or using databases and servers hosting Samsung Bixby infrastructure.

45. Attached hereto as Ex. 5, and incorporated herein by reference, is a representative claim chart detailing how Samsung infringes the '317 patent.

46. Samsung is liable for its infringements of the '317 patent pursuant to 35 U.S.C. § 271.

*Damages*

47. R2 Solutions has been damaged as a result of Samsung's infringing conduct described in this Count. Samsung is, thus, liable to R2 Solutions in an amount that adequately compensates it for Samsung's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III

48. R2 Solutions incorporates paragraphs 1–12, 15–17, and 25–29 herein by reference.

49. This cause of action arises under the patent laws of the United States, and in particular 35 U.S.C. § 271, *et seq.*

50. R2 Solutions is the owner of the '277 patent with all substantial rights to the '277 patent, including the exclusive right to enforce, sue, and recover damages for past and future infringements.

51. The '277 patent is valid and enforceable and was duly issued in compliance with Title 35 of the United States Code.

*Direct Infringement (35 U.S.C. § 271(a))*

52. Samsung has directly infringed and continues to directly infringe one or more claims of the '277 patent in this District and elsewhere in Texas and the United States.

53. To this end, Samsung has infringed and continues to infringe, either by itself or via an agent, at least claims 14–15, 20, and 22–23 of the '277 patent by, among other things, making, offering to sell, selling, using, and/or importing devices with Samsung Bixby, including the Galaxy S20, S20+, S20 Ultra, Note10, Note10+, S10e, S10, S10+, Fold, Note9, S9, S9+, Note 9, S8, and S8+.

54. Attached hereto as Ex. 6, and incorporated herein by reference, is a representative claim chart detailing how Samsung infringes the '277 patent.

55. Samsung is liable for its direct infringements of the '277 patent pursuant to 35 U.S.C. § 271(a).

*Indirect Infringement (35 U.S.C. § 271(b), (c))*

56. Samsung has knowledge of the '277 patent at least based on the filing and service of this Complaint.

57. Despite having knowledge of the '277 patent, Samsung has specifically intended, and continues to specifically intend, for persons who acquire and use devices with Samsung Bixby (including the Galaxy S20, S20+, S20 Ultra, Note10, Note10+, S10e, S10, S10+, Fold, Note9, S9, S9+, Note 9, S8, and S8+), including its customers, to use devices in a manner that infringes claims 22–23 of the '277 patent.  This is evident when Samsung encourages and instructs customers and other end users in the use and operation of Samsung Bixby, including the use of Bixby to type in a search command.

58. In particular, despite having knowledge of the '277 patent, Samsung has provided, and continues to provide, instructional materials that specifically teach and encourage customers and other end users to use devices with Samsung Bixby in an infringing manner. *See, e.g.*, https://www.samsung.com/us/support/answer/ANS00080453/#:~:text=Interact%20with%20text&text=Depending%20on%20your%20settings%2C%20press,and%20complete%20it%20right%20away.  By providing such instructions, Samsung knows (and has known), or should know (and should have known), that its actions have actively induced, and continue to actively induce, infringement.  Samsung is, thus, liable for induced infringement under 35 U.S.C. § 271(b).

59. Additionally, Samsung knows, and has known, that devices with Samsung Bixby include proprietary hardware components and software instructions that work in concert to perform specific, intended functions. Such specific, intended functions, carried out by these hardware and software combinations, are a material part of the inventions of the '277 patent and are not staple articles of commerce suitable for substantial non-infringing uses.

60. Specifically, each device with Samsung Bixby contains memory and a processor that are specifically programmed and/or configured to implement the functionality described in

Exhibit 6, which infringes claims 22–23 of the '277 patent. Samsung is, thus, liable for contributory infringement under 35 U.S.C. § 271(c).

*Damages*

61. R2 Solutions has been damaged as a result of Samsung's infringing conduct described in this Count. Samsung is, thus, liable to R2 Solutions in an amount that adequately compensates it for Samsung's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**DEMAND FOR A JURY TRIAL**

R2 Solutions demands a trial by jury on all issues triable of right by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**PRAYER FOR RELIEF**

R2 Solutions respectfully requests that this Court enter judgment in its favor and grant the following relief:

(i) Judgment and Order that Samsung has directly infringed one or more claims of each of the patents-in-suit;

(ii) Judgment and Order that Samsung has indirectly infringed one or more claims of the '277 patent;

(iii) Judgment and Order that Samsung must pay R2 Solutions past and future damages under 35 U.S.C. § 284, including supplemental damages arising from any continuing, post-verdict infringement for the time between trial and entry of the final judgment, together with an accounting, as needed, as provided under 35 U.S.C. § 284;

(iv) Judgment and Order that Samsung must pay R2 Solutions reasonable ongoing royalties on a go-forward basis after Final Judgment;

(v) Judgment and Order that Samsung must pay R2 Solutions pre-judgment and post-judgment interest on the damages award;

(vi) Judgment and Order that Samsung must pay R2 Solutions' costs;

(vii) Judgment and Order that the Court find this case exceptional under the provisions of 35 U.S.C. § 285 and accordingly order Samsung to pay R2 Solutions' attorneys' fees; and

(viii) Such other and further relief as the Court may deem just and proper.

Dated: January 29, 2021                                         Respectfully submitted,

*/s/ Edward R. Nelson III*
**EDWARD R. NELSON III**
STATE BAR NO. 00797142
**BRENT N. BUMGARDNER**
STATE BAR NO. 00795272
**ANDREW J. WRIGHT**
STATE BAR NO. 24063927
**CHRISTOPHER G. GRANAGHAN**
STATE BAR NO. 24078585
**HILL BRAKEFIELD**
STATE BAR NO. 24110604
**NELSON BUMGARDNER ALBRITTON PC**
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
817.377.9111
ed@nbafirm.com
brent@nbafirm.com
andrew@nbafirm.com
chris@nbafirm.com
hill@nbafirm.com

**COUNSEL FOR
PLAINTIFF R2 SOLUTIONS LLC**